UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **EMERGENCY COVID-19 FILING** |
| | § | |
| v. | § | NO. 4:15-CR-80-01 |
| | § | |
| KIRK LAWRENCE BRANNAN | § | |

**EMERGENCY MOTION FOR A REDUCTION IN
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

TO UNITED STATES DISTRICT JUDGE LEE H. ROSENTHAL:

Defendant, Kirk Lawrence Brannan, files this emergency motion to re-sentence him to a sentence of imprisonment of time-served or, alternatively, a sentence of time-served followed by a term of supervised release not to exceed the balance of his original prison sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

I.

Brannan pled guilty to one count of bank fraud pursuant to a plea agreement on April 30, 2018. The Court assessed punishment at 36 months in prison on April 1, 2019. He surrendered to the custody of the Bureau of Prisons (BOP) at FCI Oakdale II in Oakdale, Louisiana, on June 18, 2019.

Brannan is 66 years old with medical diagnoses of high blood pressure and high cholesterol. He was licensed to practice in law in Texas and had no criminal

1

history before this conviction. He lost that license as a result of the conviction. He has been confined for more than nine months and has had no disciplinary incidents in BOP. To the contrary, he has worked hard, taken classes, and kept his head down. In candor, his confinement has been utterly uneventful until now.

## II.

COVID-19 unleashed itself on the inmate population and staff at BOP's facilities in Oakdale, Louisiana, in March of 2020 in a terrifying manner not seen at any other BOP facility nationwide.[1]

According to a *Washington Post* article about the impact of COVID-19 on the BOP facilities at Oakdale, published on March 29, 2020, one inmate had died from the virus,[2] a guard was admitted to a hospital intensive care unit, 30 inmates and staff had tested positive for the virus, and at least 60 inmates and an unknown number of staff were in quarantine.[3] "It's been simultaneous, just people getting sick back to back to back to back," stated Corey Trammel, a union representative for guards at

---

[1] The Oakdale Federal Correction Complex consists of three facilities: two main prisons known as FCI Oakdale I and II, and a minimum-security satellite camp that is part of the FCI Oakdale II complex. Brannan is confined in the satellite camp.

[2] BOP confirmed the first inmate death in a press release issued on March 28, 2020. *See* https://www.bop.gov/resources/news/pdfs/20200328_press_release_oak_death.pdf

[3] Kimberly Kindy, "An explosion of coronavirus cases cripples a federal prison in Louisiana," *Washington Post*, March 29, 2020, 3:10 p.m. CDT. *See* https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html.

FCI Oakdale. "We don't know how to protect ourselves. Staff are working 36-hour shifts—there's no way we can keep going on like this." Trammel believes that all Oakdale prison staff have been exposed to the virus and should be in self-quarantine. Neither BOP nor the warden of FCI Oakdale provided comment to the *Post*.

A local media outlet, *The Lens*, reported on March 31, 2020, that BOP has stopped testing inmates at Oakdale who are symptomatic for COVID-19 because of "sustained transmission" at the facilities.[4] In other words, to conserve valuable testing resources, BOP officials assume that anyone who presents with symptoms is positive. The virus is that rampant. Yet, BOP reportedly refuses to release the number of presumed positive cases, making it impossible to know exactly how many inmates at Oakdale have contracted the virus. Evidently, it also declined to answer specific questions about what is taking place at Oakdale, such as when the decision was made to stop testing, whether or not guards have been moving back and forth between the multiple prison facilities at the complex, how many inmates have been transferred to the hospital, or how the prison is defining "symptomatic."

FCI Oakdale II includes the minimum-security satellite camp where Brannan is confined. The prison's website lists the population of the camp at 141 inmates.[5]

---

[4] https://thelensnola.org/2020/03/31/louisiana-federal-prison-no-longer-testing-symptomatic-inmates-for-coronavirus-due-to-sustained-transmission/

[5] https://www.bop.gov/locations/institutions/oad/

Reportedly, it is composed of two dormitories with approximately 70 bunk beds in each one, with no cells or other means of isolating or social distancing.[6] Staff and guards travel back and forth between the facilities in the Oakdale complex. In other words, if the virus hits the satellite camp, it likely will infect the entire inmate population, including Brannan. As of the evening of April 1, 2020, counsel has information that someone at the satellite camp has contracted COVID-19.

Brannan files this emergency motion for relief from his sentence because time is of the essence. As counsel drafts the motion, local media has reported that *two more* Oakdale inmates died from the virus on April 1, 2020.[7] A minimum-security prison complex for low-level offenders, Oakdale is on the cusp of becoming a *de facto* Death Row.

### III.

Attorney General William Barr issued a memorandum[8] on March 26, 2020, authorizing BOP to transfer at-risk, non-violent inmates who pose minimal likelihood of recidivism from BOP facilities to home confinement to protect the safety of BOP personnel and the inmate population in the face of COVID-19. Barr

---

[6] https://thelensnola.org/2020/03/31/louisiana-federal-prison-no-longer-testing-symptomatic-inmates-for-coronavirus-due-to-sustained-transmission/

[7] https://www.vice.com/en_us/article/5dmend/second-inmate-dies-from-covid-19-at-louisiana-prison-as-entire-federal-system-goes-on-lockdown (updated April 1, 2020, at 5:27 p.m.).

[8] https://www.justice.gov/file/1262731/download

recognized that some inmates may be safer at home than in BOP facilities. Brannan is such an inmate.

Counsel contacted Gerard Rawls, counsel for BOP at FDC Houston, on March 27, 2020. Rawls said that he is responsible for legal matters at FCI Oakdale. Counsel asked how Brannan could apply to serve the remainder of his sentence in home confinement pursuant to the Barr Memo. Rawls replied that he was waiting for instruction on how to implement the Memo. Counsel followed up with Rawls on March 30, 2020. He replied that BOP personnel still were waiting for guidance from the Department of Justice in Washington, D.C. Counsel has not heard from Rawls since they corresponded on March 30. Moreover, Brannan has tried to advocate for himself internally, asking his case manager to request that he be allowed to serve the remainder of his sentence by home confinement. It appears that BOP officials cannot implement the enumerated factors in the Barr Memo quickly enough to provide meaningful relief to inmates at Oakdale facilities.

Brannan's efforts to exhaust his administrative remedies have been fruitless. Given the extraordinary circumstances of the spread of COVID-19 at Oakdale—and his heightened risk as a 66-year-old man with a serious medical condition[9]—he

---

[9] The American Heart Association reports that "elderly people with . . . high blood pressure may be more susceptible to the coronavirus and more likely to develop more severe symptoms." Data shows a 6% rate of death of people with COVID-19 and high blood pressure. *What people with high blood pressure need to know about COVID-19*, March 31, 2020, https://newsroom.heart.org/news/what-people-with-high-blood-pressure-need-to-know-about-covid-19.

cannot wait any longer to seek compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

IV.

For many years, 18 U.S.C. § 3582(c)(1)(A) has allowed district courts to reduce sentences of federal inmates for "extraordinary and compelling reasons," often referred to as "compassionate release." Until December 21, 2018, only the Director of BOP could request such a sentence reduction.

Under the First Step Act, BOP no longer has a monopoly on the decision whether to file "compassionate release" motions. Rather, federal inmates may file them with the original sentencing court. 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

The Sentencing Commission policy statement on reductions of sentences under 18 U.S.C. § 3582(c)(1)(A) lists three specific categories of "extraordinary and compelling reasons" but expressly does not restrict what combination of factors can warrant release. U.S.S.G. § 1B1.13 (p.s.), comment. (n.1(A)-(D)).[10]

---

[10] The three specific categories are: (1) terminal illness of the inmate, or an irrecoverable serious physical, medical, or mental issue that prevents the inmate from providing himself with self-care within the prison; (2) age of the defendant, combined with a serious deterioration in physical or mental health because of the aging process; and (3) death or incapacitation of the caregiver of the inmate's minor children, or incapacitation of the inmate's spouse or partner. *See* U.S.S.G. § 1B1.13 (p.s.), comment. (n.1(A)-(C)).

V.

"Extraordinary and compelling reasons" warrant a reduction of Brannan's sentence and immediate release from confinement. The rampant spread of COVID-19 at the Oakdale facilities—resulting in the deaths of at least three inmates, the hospitalizations of prison staff, the isolation and quarantining of dozens of inmates who are positive for the virus or have been exposed to it, and the self-quarantining of countless staff—make it unsafe for a 66-year-old man with high blood pressure to remain confined there.

A sentence reduction is consistent with and supported by the factors in 18 U.S.C. § 3553(a), whose consideration is mandated by § 3582(c)(1)(A) "to the extent they are applicable." Two of those factors now carry more weight than at the time of sentencing: (1) "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); and (2) "the need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner," 18 U.S.C. § 3553(a)(2)(D). First, Brannan's age and vulnerability to COVID-19 weigh in favor of reducing his sentence. Second, he is a non-violent offender confined in a minimum-security camp and poses a low risk of recidivism. A real estate developer and (former) lawyer by trade with a background in accounting, he poses no threat of violence to the community should the Court release him from custody. Third, his impeccable conduct in prison weighs heavily in his favor. Fourth, he has a re-entry plan that

will prevent recidivism and ensure his health and safety as well as the public's health and safety should the Court reduce his sentence. His step-daughter, Brandy Pate, can pick him up from the Oakdale facility within four hours of this Court granting the motion and ordering his release from prison. She will drive him to his residence in Brazoria County, Texas, where he will reside with his wife during any period of supervised release. He will self-quarantine at home as long as necessary to ensure his health and safety and that of others. And he will obtain suitable, gainful employment. In sum, the § 3553(a) factors weigh heavily in Brannan's favor.

This Court is in the business of weighing equities to make consequential decisions. Yet, other than habeas corpus proceedings in death penalty cases, few prior cases could have presented the potential, if not likely, life-or-death consequences that this case presents. The Court should grant this motion because so rarely do justice and mercy require the same result. *See Walker v. Martel*, 709 F.3d 925, 950-51 (9th Cir. 2013) (Gould, J., concurring in part & dissenting in part) ("Shakespeare told us that '[t]he quality of mercy is not strain'd,' Milton instructed us to "temper so [j]ustice with mercy" and advised us that '[m]ercy [must] colleague with justice,' and President Lincoln reminded us that 'mercy bears richer fruits than strict justice.'") (citations omitted); *The Torah,* Micah 6:8 ("what does the Lord require of you but to do justice, and to love kindness, and to walk humbly with your God.").

## **CONCLUSION**

After more than nine months of confinement, the loss of his law license, and facing imminent grave illness or death, Kirk Brannan is prepared to walk humbly in this world. He respectfully requests that the Court grant this motion and re-sentence him to a sentence of imprisonment of time-served or, alternatively, a sentence of time-served followed by a term of supervised release not to exceed the balance of his original prison sentence. Should the Court require additional development of the record before it rules on this motion, Brannan requests that it conduct an emergency evidentiary hearing to determine the extent of the health and safety crisis at the FCI Oakdale Complex.[11] Counsel requests that the warden and medical director of the BOP facilities at Oakdale, as well as Brannan, be available to testify at any hearing.

Respectfully submitted,

*/s/ Josh Schaffer*
Josh Schaffer
State Bar No. 24037439

1021 Main, Suite 1440
Houston, Texas 77002
(713) 951-9555
(713) 951-9854 (facsimile)
josh@joshschafferlaw.com

Attorney for Defendant
KIRK LAWRENCE BRANNAN

---

[11] Counsel will make himself available to the Court all 24 hours of the day, any day this week or weekend, either telephonically or by videoconference.

## CERTIFICATE OF CONFERENCE

I attempted to confer with Robert Johnson, assistant United States attorney, by email on March 30 and April 1, 2020. However, as of the filing of this motion, he has not notified me whether the Government opposes the requested relief.

*/s/ Josh Schaffer*
Josh Schaffer

## CERTIFICATE OF SERVICE

I served a copy of this motion on Robert Johnson, assistant United States attorney, using the electronic case filing system of the court on April 2, 2020.

*/s/ Josh Schaffer*
Josh Schaffer